1  SAM S. PUATHASNANON, Cal. Bar No. 198430
   Email: puathasnanons@sec.gov
2  DAVID J. VANHAVERMAAT, Cal Bar. No. 175761
   Email: vanhavermaatd@sec.gov
3  JUNLING MA, Cal. Bar No. 213241
   E-mail: maj@sec.gov
4
5  Attorneys for Plaintiff
   Securities and Exchange Commission
   Michele Wein Layne, Regional Director
6  Lorraine B. Echavarria, Associate Regional Director
   John W. Berry, Regional Trial Counsel
7  5670 Wilshire Boulevard, 11th Floor
   Los Angeles, California 90036
8  Telephone:  (323) 965-3998
   Facsimile:  (323) 965-3815
9

10                 **UNITED STATES DISTRICT COURT**

11                    **DISTRICT OF ARIZONA**

12  SECURITIES AND EXCHANGE
    COMMISSION,                               Case No.
13
                    Plaintiff,
14                                            **COMPLAINT**

15      vs.

16  JEFFREY STEBBINS and CORBIN
    JONES,
17
                    Defendants.
18

19      Plaintiff Securities and Exchange Commission ("Commission") alleges as

20  follows:

21                           **SUMMARY**

22      1.    This case concerns a multi-faceted fraudulent scheme perpetrated by

23  Defendants Jeffrey Stebbins ("Stebbins") and Corbin Jones ("Jones").  Continuing

24  from April 2006 through mid-2009, Stebbins and Jones defrauded investors in

25  connection with investments in a tankless water heater venture.  They used a

26  variety of entities to facilitate the fraud:  Noble Systems, Inc. ("Noble Private"), a

27  private company Defendants co-founded in October 2006 to develop the tankless

28  water heater; Noble Innovations, Inc. ("Noble Innovations"), a public but thinly

                                    1

traded microcap company that merged with Noble Private in June 2008; and SIP Finance I, LLC ("SIP Finance") and Cellinium Group, LLC ("Cellinium"), entities Defendants used to lure investor money as part of the fraud.

2.      Defendants' fraudulent scheme was carried out over three years. Starting in April 2006, Stebbins and Jones solicited investors to invest in and support the tankless water heater venture, ultimately misappropriating at least $1.8 million of the $6.3 million they helped to raise from the investors for the venture. They solicited, offered and sold Noble Private and Noble Innovations stock even after they were no longer associated with any registered broker-dealer.

3.      Continuing their fraudulent scheme, in mid-2008 Stebbins and Jones fraudulently duped shareholders of Noble Private to swap their Noble Private shares for shares in the publicly-traded company, Noble Innovations.  However, as a result of a scheme orchestrated by Defendants, this share swap ultimately generated huge gains for the Defendants at the expense of the Noble Private shareholders.  Another aspect of their fraudulent scheme involved Stebbins and Jones directly misappropriating Noble Innovations stock from investors.

4.      Throughout much of this time, Stebbins and Jones actively traded in Noble Innovations stock using a variety of trading accounts, under different names, and through different brokers, while selling the shares into the accounts of unsuspecting individuals.  This trading generated trading profits for Defendants exceeding $557,000.

5.      Finally, Defendants never disclosed, as they were required to do, their significant holdings in the publicly-traded Noble Innovations company.

6.      By engaging in this conduct, Stebbins and Jones violated the antifraud provisions of the federal securities laws, acted as unregistered brokers, and failed to report their beneficial ownership of securities.  Therefore, with this action, the Commission seeks permanent injunctions, disgorgement with prejudgment interest, civil penalties, and a penny stock bar against both Defendants.

2

**JURISDICTION AND VENUE**

7.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa.

8.     Defendants Stebbins and Jones have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

9.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Stebbins and Jones both reside in this district.

**DEFENDANTS**

10.     **Jeffrey Stebbins**, age 38, resides in Mesa, Arizona.  From 2006 through 2009, Stebbins engaged in business through several entities, including SIP Finance and Cellinium (d/b/a "Winfield Investment Partners").

11.     **Corbin Jones**, age 37, resides in Gilbert, Arizona.  From 2006 through 2009, Stebbins engaged in business through several entities, including SIP Finance and Cellinium (d/b/a "Winfield Investment Partners").

**STATEMENT OF FACTS**

A.     **Stebbins's and Jones's Background**

12.     Stebbins and Jones were associated with a registered broker until June 2007, when the broker deregistered with the NASD, now FINRA.  Both Stebbins and Jones were permanently barred by FINRA in 2009 from association with any

3

1 | broker-dealer.

2 |     13.    Specifically, Stebbins was a registered representative associated with

3 | several broker-dealers, including Times Securities, Inc., at various times from

4 | September 1995 through June 2007.  He stopped being associated with any

5 | registered broker-dealer on June 8, 2007, when Times Securities, Inc. ceased its

6 | registration.

7 |     14.    Jones was a registered representative associated with, among other

8 | broker-dealers, Times Securities, Inc., from June 2002 through June 2007.  Like

9 | Stebbins, he stopped being associated with any registered broker-dealer on June 8,

10 | 2007, when Times Securities, Inc. ceased its registration.

11 |     15.    Later, on March 17 and November 21, 2009, respectively, FINRA

12 | permanently barred Jones and Stebbins from association with a broker-dealer in

13 | any capacity for, among other things, failing to cooperate in a FINRA investigation.

14 | **B.**    **Defendants' Solicitation of Investors for the Water Heater Venture**

15 |     16.    Starting in April 2006 and continuing to mid-2009, Stebbins and

16 | Jones raised money for a tankless water heater venture by soliciting investors and

17 | offering securities issued by a variety of companies.  Often used in residences,

18 | tankless water heaters are generally designed to heat water instantly as the water

19 | passes through pipes, rather than wasting energy and space heating the water in

20 | large containers like traditional water heaters.

21 |     17.    During this three-year period, Stebbins and Jones helped to raise

22 | approximately $6.3 million from investors.  The investors were told that this

23 | money would be used to develop and support the water heater project.  As alleged

24 | below, this was not true.

25 |     18.    In March 2006, SIP Finance, whose sole member was Stebbins, was

26 | formed.  From April 2006 through May 2007, Stebbins and Jones solicited and

27 | sold securities issued by SIP Finance, ultimately raising at least $2.2 million from

28 | investors.  The investors did not receive any offering materials about SIP Finance,

1    and the SIP Finance offering was never registered with the Commission.

2        19.    Then, in October 2006, Stebbins and Jones co-founded Noble Private,

3    a non-public company, which allegedly held the technology for the tankless water

4    heater. A portion of the SIP Finance offering proceeds were provided to Noble

5    Private and, at some point, SIP Finance allegedly received 1,950,000 shares of

6    Noble Private stock (although there is no evidence the shares were ever issued to

7    SIP Finance).

8        20.    Stebbins and Jones were also involved in a publicly-traded company

9    that ultimately changed its name to Noble Innovations in May 2007. Stebbins and

10   Jones were consultants to Noble Innovations.

11       21.    From January 24, 2007 through April 27, 2010, Noble Innovations

12   was quoted on the OTCBB and then subsequently on the OTC Link, formerly

13   known as Pink Sheets. Noble Innovations formerly traded under the ticker

14   symbols "NBIV.OB" and "XSIV.OB," and currently trades under the symbol

15   "NOBV.PK." At all relevant times, Noble Innovations's stock was registered with

16   the Commission pursuant to Section 12(g) of the Exchange Act.

17       22.    In June 2008, Noble Private merged into Noble Innovations. In

18   connection with the merger, SIP Finance was allotted 2,242,500 shares of Noble

19   Innovations based on its purported holding of 1,950,000 shares of Noble Private.

20       23.    Meanwhile, Jones formed Cellinium in July 2007. Both Stebbins and

21   Jones controlled Cellinium, which, among other things, owned shares of Noble

22   Innovations.

23       24.    From November 2007 through mid-2009, Jones sold shares of Noble

24   Innovations held by Cellinium or promissory notes issued by Cellinium to

25   investors. These investors were previous Noble Private or Noble Innovations

26   investors with whom Stebbins and Jones had regular business dealings, and who

27   understood Stebbins's and Jones's close association with the two companies. In

28   total, Cellinium received at least $902,930 from the investors solicited by Stebbins

1   and Jones.

2       25.    While Stebbins and/or Jones were soliciting and raising money

3   through SIP Finance (from 2006 to 2007) and through Cellinium (from 2007 to

4   2009), they were also personally and directly involved in soliciting investors and

5   selling securities issued by Noble Private and Noble Innovations.  Specifically,

6   from October 2006 to mid-2009, Stebbins and Jones directly contacted potential

7   investors, organized and participated in investor dinner seminars and presentations

8   in Arizona and California, negotiated investment terms, and prepared and

9   processed investment documentation and stock certificates for investors in these

10  two companies.

11      26.    These solicitations continued even after Stebbins and Jones ceased to

12  be associated with a registered broker-dealer in June 2007.  Neither of the

13  Defendants was an employee of Noble Private or Noble Innovations when they

14  solicited, offered and sold shares in these companies.

15      27.    Stebbins and Jones also promoted Noble Innovations and Noble

16  Private to broker-dealers and consulting firms, and offered to pay commissions or

17  referral fees to others in order to raise money for these companies.  In addition,

18  Stebbins periodically recommended that shareholders purchase additional Noble

19  Innovations stock on the open market.

20      28.    Stebbins and Jones received Noble Innovations stock and warrants in

21  exchange for their "consulting services," which comprised significantly of capital

22  raising activities.  In addition, as alleged below, each misappropriated investor

23  money.

24      29.    During this three-year period, by soliciting investors and offering and

25  selling them securities issued or owned by SIP Finance, Cellinium, Noble

26  Innovations, and Noble Private, Stebbins and Jones each acted as broker-dealers.

27  During most of this time, however, they were not associated with any registered

28  broker-dealer.

C.   **Defendants' Fraudulent Scheme**

30.    Defendants Stebbins and Jones engaged in a continuous, three-year fraudulent scheme, from 2006 to 2009, to defraud investors in a supposed tankless water heater venture.  There were several aspects of this scheme, all with the purpose of defrauding these investors for their own benefit.

1.   **Defendants' Misappropriation of Investor Proceeds**

31.    Stebbins and Jones each personally told investors that the money raised and invested in SIP Finance would be used to develop the tankless water heater venture.  Similarly, when Jones sold investors shares of Noble Innovations stock owned by Cellinium and the Cellinium notes, he told investors the money would be used as Noble Innovations' working capital or to develop the tankless water heater product.  These representations were false.  Stebbins and Jones misappropriated substantial amounts of these proceeds from SIP Finance and Cellinium for their own benefit.

32.    From April 2006 through January 2007, Stebbins only disbursed $371,209 from SIP Finance's bank account that he controlled to fund the tankless water heater project.  This represented less than 17% of the $2.2 million raised in the SIP Finance offering that Defendants claimed would be used to develop the project.  Instead, Stebbins and Jones diverted much of the offering proceeds for their own use.  From June 2006 through May 2007, Stebbins and Jones took at least $1.15 million, or 52% of the SIP Finance offering proceeds.  Of this misappropriated amount, $395,900 was diverted to Stebbins, $316,051 to Jones, $36,783 to their jointly owned building, and $400,000 to purchase for themselves shares of the predecessor company to Noble Innovations.

33.    Similarly, of the $902,930 that Cellinium received from investors through the sale of Cellinium-owned Noble Innovations stock or Cellinium-issued promissory notes, Cellinium loaned only $255,922 to Noble Innovations as cash advances to support the water heater venture.  Stebbins and Jones misappropriated

the remaining $647,008 of these proceeds to support the business activities of Cellinium that were wholly unrelated to Noble Innovations or to support their lavish lifestyles, including the lease of luxury automobiles. Stebbins and Jones were able to accomplish this misappropriation because they had sold investors securities owned or issued by Cellinium, which Defendants controlled, rather than having the investors invest directly in either Noble Private or, after the merger, Noble Innovations – that is, the companies that purportedly were developing the tankless water heater product.

34.     In total, Stebbins and Jones misappropriated from SIP Finance and Cellinium at least $1.8 million, which was, based on their representations to investors, supposed to have been used to support the tankless water heater venture. This misappropriated amount represents about 29% of the $6.3 million they helped to raise for the venture through the solicitation and sale of investments in SIP Finance, Cellinium, Noble Private and Noble Innovations over the three-year period from 2006 to 2009.

35.     Stebbins and Jones each knew, or was reckless in not knowing, that they intended to divert and misappropriate substantial amounts of the proceeds from the SIP Finance and Cellinium offerings for their own use and benefit. Each also knew, or was reckless in not knowing, that the representations they made to potential investors regarding the use of these proceeds – to develop the tankless water heater venture – were false.

### 2.     Defendants' Fraudulent Stock Swap

36.     Another related aspect of Stebbins's and Jones's scheme was a fraudulent share swap that they orchestrated to the detriment of certain Noble Private shareholders. Specifically, in April 2008, Stebbins and Jones exploited the complaints of some Noble Private shareholders to deceive them into exchanging their stock for Noble Innovations stock that Stebbins and Jones knew would soon drop in value.

37.     A group of twelve investors had purchased $374,000 worth of Noble Private stock in 2007 through a former business partner of Stebbins and Jones. The business partner had promised these shareholders that their Noble Private stock would be exchanged for shares of a publicly traded company at a 4-to-1 ratio. Although the public company, Noble Innovations, came into existence in May 2007, it took no action to exchange the shares. The shareholders grew frustrated and Stebbins's business partner complained to Noble Innovations and Stebbins on their behalf.

38.     In late April 2008, Stebbins and Jones orchestrated a share swap between Cellinium and these shareholders. Based on Noble Innovations' stock records, as part of that swap, the shareholders collectively gave Cellinium 748,000 shares of Noble Private in exchange for 230,500 shares of Noble Innovations owned by Cellinium.

39.     This share swap, however, was simply another means by which Stebbins and Jones deceived and defrauded investors. Defendants did not tell these shareholders that Noble Innovations was soon going to conduct a 20:1 reverse split and merge with Noble Private. Stebbins and Jones knew that this split was going to occur because they, as consultants to the company, had recommended the reverse split.

40.     On May 20, 2008, the reverse stock split became effective, reducing the Noble Innovations shares held by these shareholders from 230,500 to 11,525.

41.     The merger followed in June 2008, at which point each share of Noble Private was converted into 1.15 shares of Noble Innovations stock. As a result of the merger, the 748,000 Noble Private shares once owned by the disgruntled shareholders (and now owned by Cellinium) were converted into 860,200 Noble Innovations shares.

42.     The results of the deceptive share swap were catastrophic for these shareholders and provided a financial windfall to Stebbins and Jones. The

1  shareholders wound up with only 11,525 shares of Noble Innovations stock when,
2  if Stebbins and Jones had not deceived them, they would have collectively received
3  860,200 shares of Noble Innovations.  Based on the $7.50 closing price of Noble
4  Innovations stock on June 26, 2008, the shareholders lost approximately $6
5  million.

6      43.   By contrast, Stebbins and Jones avoided significant dilution to their
7  Noble Innovations holdings by unloading them on the disgruntled shareholders
8  before the reverse stock split.

9      44.   Stebbins and Jones each knew, or was reckless in not knowing, that
10  the Noble Private-Noble Innovations share swap with Cellinium and the
11  subsequent stock split at Noble Innovations would lead to substantial financial loss
12  for the twelve shareholders and significant gains for each Defendant.

13      45.   The manner in which Stebbins and Jones conducted the share swap
14  was also highly deceptive.  Stebbins and Jones exploited their access to the non-
15  public information about the imminent reverse stock split and merger and
16  concealed it from the shareholders.

17      46.   They also rushed the share swap to complete it before Noble
18  Innovations announced the reverse stock split.  For example, Jones visited one
19  shareholder in person and completed the swap by having the investor sign the share
20  exchange agreement and then gave him pre-dated, post-swap certificates for Noble
21  Innovations stock.  Stebbins and Jones also swapped the shares of all of the
22  shareholders even though one of those shareholders never even signed the swap
23  agreement or otherwise authorized the transaction.

24      47.   Stebbins and Jones also hid from investors the fact that the share swap
25  was with the company they controlled, Cellinium, and not Noble Innovations.
26  Indeed, Stebbins had the form for the share exchange agreement written to avoid
27  mentioning Cellinium as the counterparty.

28

10

### 3.   Defendants' Misappropriation of Noble Innovation Stock

48.   In another component of their fraudulent scheme, Stebbins and Jones engaged in an outright misappropriation of Noble Innovations shares from investors.  Following the June 2008 merger between Noble Innovations and Noble Private, SIP Finance was allotted 2,242,500 shares of restricted Noble Innovations stock because of its holdings in Noble Private.  Instead of distributing the restricted stock *pro rata* to all SIP Finance investors, Stebbins and Jones distributed only 860,300 shares to a subset of SIP Finance investors.  Stebbins and Jones transferred 426,100 shares to Cellinium, which they controlled, and gave the remaining 956,100 shares to several individuals who had invested in Noble Innovations and other ventures connected to Stebbins and Jones.

49.   Based on the $0.82 closing price on January 2, 2009, the date on which the restricted Noble Innovations shares would first become eligible for resale, the 2,242,500 Noble Innovation shares allotted to SIP Finance were worth $1,838,850.  Because Stebbins and Jones did not distribute all of these shares to the SIP Finance investors, these investors received only 38%, or approximately $700,000, of this amount, rather than the entire allotment that was owed to them.

50.   Stebbins and Jones each knew, or was reckless in not knowing, that the SIP Finance investors were rightfully owed the 2,242,500 shares of Noble Innovations and that these investors did not receive this full allotment.  Nevertheless, each of the Defendants was personally involved in distributing only a portion of that allotment to the SIP Finance investors, while distributing the rest of the Noble Innovations shares to Cellinium or non-SIP Finance investors.

### 4.   Defendants' Profitable Trading in Noble Stock

51.   While Stebbins and Jones engaged in the fraudulent scheme alleged above, they were also engaged in self-interested trading in Noble Innovations that generated substantial profits for them.  In particular, for over a year from March 2008 through April 2009, Stebbins and Jones (1) traded using multiple accounts, in

11

1 different names, through different brokers, (2) entered trades that over time made
2 up 21% of the trades by volume, and, for some periods, up to 38% of the trading
3 by volume, and (3) dumped shares into third-party accounts they controlled.  As a
4 result of these activities, Stebbins and Jones received total trading profits
5 exceeding $557,000.

6    52.    Stebbins and Jones intended their public trading of Noble Innovations
7 stock to bolster the appearance of active trading in the stock, to reach different
8 market makers, and to increase the number of bids and orders.  For example,
9 Stebbins and Jones used seven Cellinium accounts with seven different brokers to
10 trade Noble Innovations stock.  They also used several accounts in their own name,
11 their families' names and the names of entities they controlled to trade in Noble
12 Innovations stock.  In addition, Stebbins and Jones traded Noble Innovations stock
13 in eight accounts held in the name of three investors in Noble Innovations, Noble
14 Private, and SIP Finance who had granted Jones third-party trading authority (the
15 "Noble/SIP Accounts").

16    53.    In all, from March 2008 through April 2009, Stebbins and Jones used
17 28 accounts, in 18 different names, with 14 separate brokers to trade Noble
18 Innovations stock.

19    54.    Stebbins's and Jones's trading in Noble Innovations stock comprised
20 a significant portion of the stock's total trading volume.  From March 3, 2008
21 through April 30, 2009, Noble Innovations stock's average daily trading volume
22 was 31,350 shares.  During that period, Stebbins's and Jones's total trades
23 comprised approximately 21% of the total volume of the stock traded.  In addition,
24 from September through November 2008 and from mid-December 2008 through
25 early February 2009, their trades made up over 38% and 30%, respectively, of the
26 total trading of Noble Innovations stock.

27    55.    In trading Noble Innovations' stock using the various accounts,
28 Stebbins and Jones made sure that they ultimately profited from their trading

1 activity.  Stebbins and Jones used the Noble/SIP Accounts to dump their Noble
2 Innovations stock for profit.  On many trading days, Stebbins and Jones sold Noble
3 Innovations stock from their personal accounts, while buying the same or
4 substantially the same number of shares at the same or substantially the same price
5 for the Noble/SIP Accounts.

6      56.    Also, during the entire period they exercised third-party trading
7 authority over the Noble/SIP Accounts from September 2008 through April 2009,
8 Stebbins and Jones sold significantly more shares from their personal accounts
9 than they had bought in their accounts, while buying significantly more shares in
10 the Noble/SIP Accounts than they had sold in those accounts.  The Defendants'
11 advantageous trading resulted in handsome gains for themselves but sizable loss
12 for the holders of the Noble/SIP Accounts.

13      57.    Stebbins and Jones each knew, or was reckless in not knowing, that
14 this self-interested trading resulted in significant profits for each of them to the
15 detriment of other investors.

16     **5.**    **Defendants' Failure to Disclose Their Interests in Noble**
17         **Innovations**

18      58.    Following the merger of Noble Private and Noble Innovations in June
19 2008, Stebbins and Jones gained significant control over Noble Innovations stock.
20 After the merger, Stebbins beneficially owned approximately 32% of the
21 outstanding shares of Noble Innovations and Jones owned 27%.

22      59.    Since then, the Defendants have decreased their holdings in Noble
23 Innovations.  Nonetheless, each continued to beneficially own over 10% of Noble
24 Innovations stock at least through March 2009.

25      60.    The Noble Innovations stock is registered with the Commission
26 pursuant to Section 12(g) of the Exchange Act.  Neither Stebbins nor Jones has
27 ever filed any reports required by law disclosing their beneficial ownership of
28 Noble Innovations.

**FIRST CLAIM FOR RELIEF**

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a) of the Securities Act**

61.   The Commission realleges and incorporates by reference paragraphs 1 through 60 above.

62.   Defendants Stebbins and Jones made material misrepresentations and omissions to investors and engaged in a scheme to defraud investors.

63.   Defendants Stebbins and Jones, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    (a)   with scienter, employed devices, schemes, or artifices to defraud;

    (b)   obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)   engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

64.   By engaging in the conduct described above, Defendants Stebbins and Jones, and each of them, violated, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

**SECOND CLAIM FOR RELIEF**

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations Of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

65.   The Commission realleges and incorporates by reference paragraphs 1 through 60 above.

14

66.     Defendants Stebbins and Jones made material misrepresentations and omissions to investors and engaged in a scheme to defraud investors.

67.     Defendants Stebbins and Jones, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

       (a)     employed devices, schemes, or artifices to defraud;

       (b)     made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

       (c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

68.     By engaging in the conduct described above, Defendants Stebbins and Jones, and each of them, violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### THIRD CLAIM FOR RELIEF

#### Acting as Unregistered Brokers

#### Violations of Section 15(a) of the Exchange Act

69.     The Commission realleges and incorporates by reference paragraphs 1 through 60 above.

70.     Defendants Stebbins and Jones, and each of them, by engaging in the conduct described above, made use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security without being associated with a broker or dealer that is registered with the Commission.

71.   Defendants Stebbins and Jones, and each of them, violated, and unless restrained and enjoined, will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. §78o(a).

## FOURTH CLAIM FOR RELIEF

### Failure to Report Beneficial Ownership of Public Securities
### Violations of Section 13(d) of the Exchange Act and
### Rules 13d-1 and 13d-2 thereunder

72.   The Commission realleges and incorporates by reference paragraphs 1 through 60 above.

73.   Defendants Stebbins and Jones, and each of them, by engaging in the conduct described above, failed to file with the Commission a statement containing the information required by Schedule 13D within 10 days after acquiring directly or indirectly 5% of a class of securities issued by Noble Innovations.

74.   Defendants Stebbins and Jones, and each of them, by engaging in the conduct described above, also failed to file with the Commission an amendment disclosing any material increase or decrease in the percentage of the class of Noble Innovations securities each beneficially owned.

75.   By engaging in the conduct described above, Stebbins and Jones, and each of them, violated, and unless restrained and enjoined, will continue to violate, Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and Rules 13d-1 and 13d-2 thereunder, 17 C.F.R. §§ 240.13d-1 and 240.13d-2.

## FIFTH CLAIM FOR RELIEF

### Failure to Report Beneficial Ownership of Public Securities
### Violations of Section 16(a) of the Exchange Act and Rule 16a-3 thereunder

76.   The Commission realleges and incorporates by reference paragraphs 1 through 60 above.

77.   Defendants Stebbins and Jones, and each of them, by engaging in the conduct described above, and as directly or indirectly the beneficial owners of

16

1  more than 10% of a class of securities issued by Noble Innovations, failed to file

2  with the Commission required statements of beneficial ownership on Forms 3, 4 or

3  5.

4       78.    By engaging in the conduct described above, Stebbins and Jones, and

5  each of them, violated, and unless restrained and enjoined, will continue to violate,

6  Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder,

7  17 C.F.R. §§ 240.16a-3.

8  **PRAYER FOR RELIEF**

9       WHEREFORE, the Commission respectfully requests that the Court:

10  **I.**

11       Issue findings of fact and conclusions of law that Stebbins and Jones

12  committed the alleged violations.

13  **II.**

14       Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of

15  Civil Procedure, permanently enjoining Defendants Stebbins and Jones, and their

16  agents, servants, employees, and attorneys, and those persons in active concert or

17  participation with any of them, who receive actual notice of the judgment by

18  personal service or otherwise, and each of them, from violating Section 17(a) of

19  the Securities Act, 15 U.S.C. § 77q(a), and Sections 10(b), 13(d), 15(a) and 16(a)

20  of the Exchange Act, 15 U.S.C. §§ 78j(b), 78m(d), 78o(a) and 78p(a), and Rules

21  10b-5, 13d-1, 13d-2, and 16a-3 thereunder, 17 C.F.R. §§ 240.10b-5, 240.13d-1,

22  240.13d-2, and 240.16a-3.

23  **III.**

24       Order Defendants Stebbins and Jones, to disgorge all ill-gotten gains from

25  their illegal conduct, together with prejudgment interest thereon.

26  **IV.**

27       Order Defendants Stebbins and Jones to pay civil penalties under Section

28  20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the

1 | Exchange Act, 15 U.S.C. § 78u(d)(3).

2 | **V.**

3 |     Permanently prohibit Defendants Stebbins and Jones from participating in an

4 | offering of penny stock under Section 20(g) of the Securities Act, 15 U.S.C.

5 | § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. §78u(d)(6).

6 | **VI.**

7 |     Retain jurisdiction of this action in accordance with the principles of equity

8 | and the Federal Rules of Civil Procedure in order to implement and carry out the

9 | terms of all orders and decrees that may be entered, or to entertain any suitable

10 | application or motion for additional relief within the jurisdiction of this Court.

11 | **VII.**

12 |     Grant such other and further relief as this Court may determine to be just and

13 | necessary.

14 | Dated:  April 11, 2013                                    Respectfully submitted,

15 |

16 |                         Sam S. Puathasnanon

17 |                         David J. VanHavermaat

                          Junling Ma

18 |                         Attorneys for Plaintiff

                        Securities and Exchange Commission

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |